Thank you, Your Honors. Tim Lawler for the appellant, along with my co-counsel Nathan Smith from the firm Witherspoon Kelly. It's my pleasure to represent Konklin Development and Buster Heitman. Your Honors, this is an important case. It's not a high-dollar case. It's a case about delineating the difference between an eminent domain take and a regulatory take. The fundamental question is whether there's a use by the public. It's our position that reservation of the use of all permanent use by title notice is a taking. The reservation in this case is in favor of the public. The trial court… They didn't actually take. They simply reserved the right to take at some future point, just like you make a reservation in a hotel. I haven't used the hotel room, but I have the reservation to have it at some future date. When I have to pay for it. That's correct, Your Honor. They reserved it. And there's two types of easements in this world. One of the types of easements is a reservation. And a reservation is reserving it in the interest of the public for the public to use and prohibiting me from using my property for any purpose. Well, is anybody going to use it during this reservation period? They can't use it for any economic purpose because any purpose you put it to would be temporary in the interim and any structure or other thing that you put on that… So it's essentially a form of notice that someday we're going to condemn this property. I think it's more than that, Your Honor. I think it is a present taking of an easement through a gimmick, in this case a title notice. And that title notice meets every single requirement of an easement. If you look at our initial opening brief, which was never responded to by the city, an easement is a recording. It states who is the dominant tenant, in this case the city. It states what the purpose of this, and it has a legal description. All those are present. Every easement I've heard of that's in effect also includes the right to use the property for some purpose, for walking over it or driving over it or putting a pipe through it or something, and none of those appear to attach here. Actually, the notice, Your Honor, says that the city can and will put a street in that location. Someday. Someday. When the someday comes, it's undisputed that the property will have to be paid for. But at this moment, there doesn't appear to be anything like what I understand an easement includes, which is the present right to use the property. Your Honor, they've reserved the present right to use the property, and that reservation has stripped the property of the value… Stop. What do you mean they've reserved the present right? Today, does the city have any rights to use that property? They've reserved the right to build a roadway there. When? Today? That's a good question. Well, obviously, the answer to that is no, because they haven't exercised their right. My quarrel here is with your effort to call this an easement. It's something, but I don't think it's an easement. Well, I understand, Your Honor. Let me ask a somewhat different question. Sure. Does the imposition result from the title notice or for the zoning code? It's from the title notice because it was pursuant to an adjudication, wherein the hearing examiner found that the zoning code did not apply to a lot segregation. That's all this was, was a lot segregation. It wasn't a permit. No, the zoning code applies to land. I'm not sure I understand what you mean it doesn't apply to a lot segregation. The hearing examiner's findings, I believe it was findings 42, 44, 46, and 54, said that the future acquisition area portion of the zoning code and the zoning code did not apply to this lot segregation and that he used the general powers of the police powers of the city to impose the title notice, not a specific general generic application of the zoning code. As I understand it, all the city did was adopt the Spokane County Code. Isn't that correct? Initially, that's correct, Your Honor. And the Spokane County Code was in effect when your client purchased the 5.4-acre tract of land? I'm sure it was, yes. So if they just adopted the Spokane County Code, what problem have you got? In this case, the problem I have is that what they did is, let me just back up to how this initially started. What the city said they needed was a dedication. Well, just a minute. As I understand it, they incorporated, they adopted the zoning, and because they were new, they just adopted the Spokane County Code and codified it in their own city. And you full well knew about the Spokane County Code and now you're suggesting that that code is somehow inappropriate. No, Your Honor. I'm not saying that the code is inappropriate, although I believe that if the code requires a reservation in favor of the public for public use on a roadway under the ‑‑ So the code did not require a reservation of use in this particular instance? No, Your Honor, because we're not applying for a permit or an occupancy permit. Well, could you have used the property? I mean, if it's in the zoning code, you don't have to do anything, but the zoning code doesn't have any impact if you're not trying to do anything with the property. Suppose you tried to do something with the property. Suppose you tried to build in this 25‑foot strip. Would that have collided with the zoning code? It depends, Your Honor. The way the zoning code works, if it's a setback, you can use any use in the setback not prohibited by the zoning code. This particular title notice makes you go to the city and ask for permission to put it to any use, and any permanent use will have to be removed at your sole cost if and when the city ever builds a roadway in that area. So it's just a matter of how you use your property in this particular instance? You have to go ask, but prior to that, you could do it, but they may not be so immune to it? Is that what you're saying? I mean, my worry is I'm trying to figure out what your problem is. When you knew about the county code, you purchased the property, and all the city has done is said, from now on, any use put to this, come and ask us about it, but you can do anything you want to do until we buy it. You can do anything you want to do that we permit if we give you permission, but when we come in to build the road, you're not going to get paid for any structures or any permanent use you put on there. You can't put any setbacks on there. You can't put your drainage swales on there. You can't put any parking you need for zoning on there. Anything that you put on there is going to be taken away when the city builds the road. The test and eminent domain is not when the public structure is built. The question is when does the city reserve its right to use it for public use? This property was sold to the library district, right? Correct. The declaration of Michael Wert says he discovered the problem not from the title notice, but from looking at what I take to be the zoning code when he inquired about off-title limitations. Is that correct? Well, what happened, Your Honor, is that there was a letter that's in the record, a letter from the city senior engineer saying that to Mr. Wert that we need a formal dedication from the library district for 25 feet for a roadway, a roadway that was neither designed, funded, nor a right-of-way that the city owned. The right-of-way is owned by the county. And Mr. Wert, realizing that, went to his attorney, Mr. Sloan, the former city of Spokane attorney, that what they want is a dedication. They then shifted gears when their lawyer got involved, Mr. Connelly, and said, no, we're not going to require a dedication because they can't even come close under Nolan Dolan analysis for a dedication. So they devised a future acquisition area. And just like in the city of North Platte case, what they did is they had no road designed, no funding, no approved road plan. What we had was an old railroad right-of-way that's owned by the county. And they said, what we're going to require is that you dedicate property to the city. Now, the city realized that that wouldn't pass constitutional muster. So they changed, and they went with a title notice. And they said the title notice was based on the zoning code, and specifically 14.710 of the Spokane Valley Municipal Code. The hearing examiner came in and said, no, that code does not apply to this lot segregation. We never even got to the point where there's a building permit and whether there would be a basis for a dedication and whether there would ever be a pass to Nolan Dolan requirements. Never got there. Instead, the city imposed the title notice. And in my view, if you look at the title notice, it is an easement. The city's own expert, own appraiser said that today stripped the property, the future acquisition area, of all value. And no one would pay for it. In fact, the irony of this case. Well, it doesn't – it's part of a larger segment. It's part of a larger piece of property. That's correct. And someone did pay for the property, and someone would pay for it. It would just have some effect on the value that would be paid for it. Well, the city's experts said it had no value. And based thereon, the county, or not the county, the library took the position they couldn't use tax dollars to buy that 25 feet because it had already been taken. And that the title notice was nothing more than a gimmick to deprive presently the property owner of the use of this property and to transfer that use to the city for use as a roadway. That the city didn't have the present funding or ability to build the road doesn't mean the take didn't occur. The take occurred, just like it did in Loretto, by the right to use it, not the actual use. And did the city give you back the land that you sold them? No. Why not if it was such a piece of worthless property? Why didn't the city give it back? Yeah, why didn't you ask for it back? You, after all, gave them other property, and this is a piece of worthless property. Why didn't you say give it back? We did ask for it back, Your Honor, but it's deemed an illegal lot, and you can't segregate it out. What does that mean? It means you can't have a 25-foot wide strip as a lot, so the city couldn't actually tender it back to us if they wanted to. I'd like to reserve the remaining four minutes of my time for rebuttal. Okay. Thank you. May it please the Court, Ken Harper for the City of Spokane Valley. Your Honors, I'd like to make a couple of points from the very beginning because it's important to correctly categorize a takings claim to understand what the legal consequences would be under the Fifth Amendment. I do not believe that counsel has a clear conception of what category of taking he is asserting here. From the summary judgment record, there was no evidence at all that this was an actual physical occupancy or a physical invasion or a physical existence in three dimensions of any property owned by the plaintiffs. Did it have any impact on the value of the property? It certainly did, Your Honor. Well, so there's a present-day impact. Whether you accomplish the impact by taking the property and putting barbed wire around it or by putting this piece of paper down, what difference does that make? Oh, I think it makes all the difference in the world, Judge. Under Loretto and Yee v. Escondido, it's very clear that a regulatory effect on use is not... Well, how is this regulatory? I mean, this isn't part of a general scheme of regulation, as I can see. This seems to be an effort by the city to claim property it wants to purchase. Well, Your Honor, it's regulatory in the sense that it stems from the city's zoning code. Now, I think... Oh, yeah, but the zoning code treats property the city wants to purchase differently. I mean, you're not applying the same setback to this lot that you're applying to all the other lots. And the only difference I can see is you want to buy this lot, so you want to buy it cheap.  We don't want to buy the lot. What we want to do is we want to provide for a setback adjustment that allows for this arterial right-of-way that is planned to later be expanded to the same right-of-way width that it has along the rest of its length. But the setback's being imposed greater on this property because you plan to acquire the right-of-way. I would agree with that, Your Honor, and yet that can't be... But the motivation for that is simply to make the price cheaper in the future. The motivation is to establish a setback line, and a setback line that actually adjusts the benefits and burdens to the public and the private property owner so that future roadway acquisition and future road planning can take place. But you pick a different setback line requirement for a lot just because you want it? I mean, in this case, this setback is much greater than applies to most lots. I respectfully disagree, Your Honor. In fact, one of the key issues here has to do with causation. The underlying zoning code has a setback. The only thing the future acquisition area does is it creates a different line of demarcation for measuring the setback. Twenty-five feet wider? Correct, Your Honor. So it's a 25-foot wider setback requirement for this lot? It is. So how is this regulatory? How is this not part of your acquisition of the property? Again, Your Honor, I don't concede that there's a takings distinction based on whether it's regulatory or not regulatory. Have any authority that applies these doctrines in the context of where the city's motivation is to acquire property cheap? I can't put it in quite those words, but Gorey v. Fox, the 1927 Supreme Court case. We're reaching back pretty good there, huh? I'm going to make it current, too. Gorey v. Fox establishes the legitimacy of a building line in which the town of city, of Roanoke, said that all properties must build not closer than a dimension that is shared by 60% of the other buildings already existing. So that created a spatial setback. That suggests motivation for uniformity, but in this case that's not what you're talking about. You're talking about 25 feet being taken for the road that will eventually go there. If all you were looking for is uniformity, you wouldn't need the extra 25 feet at this point. I respectfully disagree, Your Honor, because cities make capital facilities planning choices all the time on what can be acquired, and to be able to do that in a predictable way, it is not suitable to allow a major building improvement to occur in areas where you know, because the right-of-way is 100 feet the rest of the width, you know that you're going to need it at this particular pinch point. If there is a way to adopt a regulation that furthers legitimate state interests, then the city has the power to do so. In fact, I think Your Honor's question really goes to a substantive due process question, and there's no substantive due process claim in this case. This can't be a physical occupation Loretto-y kind of take, and as a regulatory take, it has to be looked at under Penn Central or Lucas, and that's where the summary judgment record just – the question I pose is, is that really what this is? Well, Your Honor, I suppose that the course question may relate to McClung v. City of Sumner, where there is a discussion of an adjudicative sort of Nolan-Dolan exaction, or possibly a legislative generally imposed regulation, and if that is in fact the premise of the course question, I'll respond that Nolan-Dolan itself does not establish the existence of a take. Nolan-Dolan is a determination of whether something that has already been determined to be a take requires just compensation. That's the Garneau v. City of Seattle case. So the suggestion that I think is at the root of the court's question regarding regulatory v. non-regulatory, I don't think matters. Particularly after Lingle, there is no fourth manner to enter this takings categorization. It's got to be a physical appropriation, which counsel said in his remarks it was, and I reject that. It doesn't occupy space. Your Honor asked, well, what if we put barbed wire up? If we had done that, it would be awfully difficult not to say that it was a physical occupation. So how different is this? It's all the difference in the world, Your Honor, because the public has no rights to use it. In fact, the library district could post no trespassing signs. The library district could put barbed wire, assuming that the City of Spokane County doesn't outlaw barbed wire in its urban areas, and consequently the right to convey it, the right to occupy it, the right to alienate it. In fact, the suggestion that there is a total loss of value was one of the problems that precluded summary judgment in the district court for plaintiffs, because there's not a total loss of value of either the entire parcel or the strip. The fact is Mr. Heitman had a sale of the tract of land at $5 a square feet. The fact is the library director determined that there was, in fact, a setback and a future acquisition area, and the library director negotiated a very nice deal for the library, because he used that as an opportunity to acquire another 25-foot strip on the north side of the tract of land for the same per-square-foot price. If you do the math, it turns out that Mr. Heitman's initial selling price of $5 got trimmed into $4.53 per square foot, but there's value, and there's no deprivation of value that would be cognizable under Penn Central. In fact, the problem of the alienation of the property to the library district is not just that it proves, in fact, there was value and that the property was alienable and that the library, in fact, can make good use of it. Mr. Ward's declaration talks about building an attractive branch library facility there. There are all those problems. The other big Penn Central problem from that sale to the library is that Mr. Heitman, Conklin Development, did not determine what the ultimate limitations of the FAA were. We don't know how it would have interfered with his investment expectations because he chose to modify his transaction with the library district. So when we talk about this 25-foot strip being a regulatory acquisition or a tantamount to a physical invasion, we're talking in fiction because it isn't. The best that counsel can do is say that somehow that ties into a Penn Central claim under the investment-backed expectations problem, I assume, but that's not going to work either because as an interference with investment-backed expectations, we don't know what it would have done. Can I just be clear about something you just said? So when Mr. Heitman gave the additional 25 feet on the other side of the property to the library district, they paid for it. Yes, they did, Your Honor. So it wasn't just that he gave it to them because the initial 25 feet had been at a diminished value. That is correct, Your Honor. So, Your Honors, I cited Gorey v. Fox earlier. I do want to bring that current. The principle behind Gorey v. Fox gets picked up again in Penn Central. It gets picked up again in Keystone. It gets picked up again in Tahoe Sierra. I don't know how Penn Central doesn't seem to be picking it up at all. Penn Central is purely regulatory. The city cites it, Your Honor. Well, my question isn't what case gets cited because who knows what it gets cited for, and it seems to me there's a material difference between the city trying to impose general setback design, ordinary zoning limitations, and an imposition of a kind that's motivated because of the city's intent someday to acquire property. Again, Your Honor, I believe that could be colorable as a substantive due process claim. I mean, the suggestion I think Your Honor is making is that this is somehow not an appropriate exercise of government power. It isn't somehow rationally related to legitimate state interest. But it doesn't fit any category of takings law. And what Penn Central does with Goreeb and what Keystone does with Goreeb and Tahoe Sierra does with Goreeb is it says under no circumstances are we going to say that you can't reserve spatially portions of property on which there shall be nothing built. That's the building line setback case that really, in fact, cites the Euclid versus Amblin Realty. I mean, we're going in some pretty fine lineage here. But could the city decide that it's going to impose a different setback requirement on one lot as opposed to all the other lots in the city? Your Honor, that would approach, again, a substantive due process claim. It might approach a class of one equal protection claim. Those things exist post-lingual. It certainly can be done. Crown Point suggests that there is some validity to that. I'd suggest it's a failing argument, though, because, in fact, as the summary judgment record indicates, the city has, it's got a real plan. This wasn't singled out or this wasn't an instance of legitimate, this wasn't an instance of local government that was somehow illegitimately singled out to apply to Mr. Heitman. In fact, it stems from the zoning code. Your Honor has asked questions of my co-counsel on where did this come from. I don't know if you want me to go into that or not. That leads to something else. Did the title notice have a real impact here, or is the limitation really derived from the zoning code? Well, Your Honor, the title notice says that pursuant to Spokane Valley Municipal Code 14.070.100, this notice is to establish the following. So the point I make in the opening brief, or my response brief, rather, that I'll make today is that the city didn't have an adjudicative choice not to impose the title restriction. The zoning code says where you have maps that define these future acquisitions that are necessary to support your comprehensive planning, and here we're talking about a light rail corridor. We're talking about something that, in fact, was integral to the incorporation of the city of Spokane Valley in 2003. When you've got that kind of legitimate planning effort, and truly, Your Honors, there's a considerable amount of energy that was spent by the city of Spokane Valley to plan this corridor. If we have that, if there have been 22 public hearings to establish that zoning code and 27 public hearings to establish that comprehensive plan provision, and if Mr. Heitman buys property while that change in regulation is occurring, and then the city receives a lot line segregation, or a subdivision, or whatever you want to call it, application, you have to look to the language of the zoning code, and it says for lot line segregations, where the city has determined that there will be future arterial, principal arterials, there has to be a minimum road width. It's 100 feet in this situation. For the majority of the unimproved Apple Way Road right-of-way, it is 100 feet. If the owner of the property had gone in for a building permit or whatever he needed to pursue development plans, and those plans collided with the zoning code, I take it he wouldn't have been given the building permit. Is there any different or any additional limitation imposed by the title notice, which kind of staples the limitations to the title so everybody knows, but is there any additional limitation from the title notice? Well, Mr. Wert would suggest that there's not. Mr. Wert would suggest that once he understood what the zoning code said, he knew what rights were affected by the zoning code. The title notice is the document that makes the zoning code public, of course, and it makes it part of the record, so to speak, but it's not the case that the title notice itself deviates from the standards of the zoning code. And further, Your Honor, I want to make sure that I touch on one of the premises of your question. I don't agree that it would have been the case that Mr. Wert could have been frustrated in his building permit applications. We don't know, and from a rightness point of view, we're not going to know because Mr. Wert and the Library District have no interest in this case. Mr. Heitman, however, by selling the land, it seems to me, has reserved only a diminution in value claim. Mr. Heitman's land isn't affected by any of this. It's gone. It's sold. Statutory warranty deed, signed, sealed, and delivered. So, Your Honor, I just don't see how, under the circumstances of the case, as considered by the district judge or in any cognizable category of takings law, I don't see how a setback or a notice establishing a slight modification, if you'll allow me the latitude, a slight modification of where the setback line is measured from, I don't know how it fits within the takings jurisprudence. Well, what I'm really wondering in this last series is, was anything lost as a result of the title notice? A portion of value of the sale between Mr. Heitman and the Library District was arguably lost. And all the takings cases that we've got say valuation diminutions, standing alone, cannot support a taking. But you suggested to me, as I've read Mr. Wert's declaration as well, that what really wasn't the title notice that caused the Library District to draw back, it was the discovery that the underlining zoning code provided for this future acquisition area. I don't disagree with that. That would be the causal link between the diminution in value and the facts of the case. Thank you, Your Honor. Thank you. Rebuttal. I ask you one quick question. How much did you lose as a result of this? How much money? The city appraiser evaluated it at $58,000. Evaluated what? The 25 feet that we did not keep pursuant to the title notice and to the use reserved to the public. He valued that as $58,000. My appraiser was a little closer to $100,000. Because what they both said is that because there's no durable economic use of that property, because it's already been transferred in the here and now, there's no investors going to assign value to that property. Unlike, you'll notice, there's no claim that the setback, because remember, this is a 25 feet, and then we have the regular setback. The regular setback does not take value from the property because there are uses. You can use that setback for things like drainage, for trees, for beautification, and for other things that everyone in the zone can use. Well, you could use this for it, too. It's just that at some point the city is going to come and take the land, take the 25 feet. In the meantime, you can do what you want with it. I assume the purpose of their notice is sort of at some point when they exercise the power of eminent domain to try and decrease what they pay you because they would have said you were on notice, that you shouldn't have done this to begin with, and therefore we don't have to pay you for it. A couple things, Your Honor. That's not health, safety, and welfare. That's not a public purpose. That's deserving the property for a public use. And that's the dividing line. And it can be gray. I understand that. That is the dividing line between eminent domain and takings analysis. Let me ask you a question, which is the biggest problem I have and which my colleague went right at the city attorney about. I guess I'm trying to figure out of the four ways for you to determine that there's some kind of a taking here, the only real way that I think you can argue in this court is the physical invasion taking.  I would essentially agree with that, Your Honor. With one exception in that it's my position the record is absolutely clear that the zoning code is not how the title notice was imposed. Well, but I guess if I look at any other of the particular situations where you might use one of the four ways to make this taking, if I look at you're going to try to go under Penn Central, you don't even cite in your brief. I'm going there, Your Honor. And it doesn't go through the factors. If I go through on a regulatory taking that has to do with the Lucas case, I believe you abandoned that argument in your opening brief. If I go to the adjudicative land exaction, that wasn't argued to the district court. If I go to... I disagree with that, Your Honor. Well, okay, tell me where it was. I read through what you said to the district court, and I didn't see it. If I go to substantive due process, that wasn't developed. So I'm trying to figure out what your best argument is. My best argument is that when you reserve private property for use by the public, that is a present taking. So you're a physical invasion. Absolutely, Your Honor. And the case I would like to direct the Court's attention to, because it really is four square with this case, and it nails it, and it's cited by both Nolan and by the Washington State Supreme Court in Burton, is Simpson v. City of North Platte. The city there used an ordinance, just like they tried to in this case. And what the city did there is they had a zoning ordinance, and they required that if you came in and asked for a permit, that you had to dedicate right-of-way. Here are the factors in that case. The city owned none of the right-of-way. The city had no plans to acquire the right-of-way.  safety, and welfare. The city said, the court said you cannot under the guise of – Is that a physical invasion case? Absolutely, Your Honor, because it's requesting – It seems to me that it goes more like one of the other exceptions that you might argue, which I didn't see argued very well in your briefs. That's what I'm trying to get at. The reason, Your Honor, that Nolan and Dolan wasn't directly addressed, the cases are cited in the reply brief before the district court, is that the city was not justifying the take under a Nolan-Dolan analysis. It was saying there was no take at all. We say that what the city did was engage in an artifice to avoid having to do a dedication and avoid having to do a Nolan-Dolan analysis, and that is, in fact, a take. Thank you, Your Honors. Thank you. We thank both counsel for their arguments and help with this complicated case. The case just argued is submitted.
judges: Clifton, Nr Smith, Cjj Korman (Edny), Dj